## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 36491 |
| | ) | Chapter 7 |
| KIMBERLY BASEL VAN ASWEGEN, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| PETER and JANET VOZELLA, individually and on behalf of GO WILD FUN SAFARIS, INC., ROBERT PACENTI, and GLENBARD TRAVEL, INC. | ) ) ) ) | Adversary No. 05 A 02736 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KIMBERLY BASEL VAN ASWEGEN, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion of Kimberly Basel Van Aswegen

(the "Debtor") for summary judgment pursuant to Federal Rule of Bankruptcy Procedure

7056, which incorporates by reference Federal Rule of Civil Procedure 56, on the complaint

filed by Peter and Janet Vozella, individually and on behalf of Go Wild Fun Safaris, Inc., an

Illinois corporation, Robert Pacenti, and Glenbard Travel, Inc., an Illinois corporation

(collectively the "Plaintiffs") that seeks to except from discharge a debt allegedly owed by

the Debtor pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6)[1] and a determination that

---

[1] Although the complaint does not specify any of these Bankruptcy Code sections,
in the Joint Pretrial Statement, the Plaintiffs acknowledge that they seek relief under these
particular sections.

-2-

the Debtor's actions constituted tortious interference with contract and tortious interference with prospective business advantage and business expectancy.[2] For the reasons set forth herein, the Court grants the Debtor's motion for summary judgment with respect to Count I of the complaint and denies the motion as to Counts II and III. The Court narrows the issues for trial under Rule 56(d). A trial is set in this matter beginning on November 26, 2007 at 1:00 p.m.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. In an adversary proceeding, a court must consider whether each count of the complaint is a core proceeding, a non-core related matter, or a claim unrelated to the bankruptcy case. *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 640 (Bankr. N.D. Ill. 2004). The Seventh Circuit has provided the following test to determine whether an action is a core proceeding: "[A] proceeding is core . . . if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990) (internal quotation omitted). The Court finds that Counts I, II, and

---

[2] As discussed in Section II *infra* of the instant Memorandum Opinion, Counts IV and V of the complaint, which allege tortious interference with contract and tortious interference with prospective business advantage and business expectancy, are not the subject of this motion.

-3-

III of the complaint, which allege claims under 11 U.S.C. § 523(a),[3] fall within the Court's

core jurisdiction under 28 U.S.C. § 157(b)(2)(I). *See Mulder*, 307 B.R. at 640.

Next, the Court has jurisdiction to determine whether it has jurisdiction over Counts

IV and V of the complaint. *See id.* Those counts allege tortious interference with contract

and tortious interference with prospective business advantage and business expectancy. The

Court finds that Counts IV and V of the complaint are non-core related matters. The

Plaintiffs' claims against the Debtor under these counts do not satisfy the test for core

proceedings set forth by the Seventh Circuit. These two causes of action do not "arise under

the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's

right or remedy, rather than just the procedural vehicle for the assertion of a right conferred

by . . . state law." *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997).

Indeed, courts have found such state law claims to be non-core in nature due to their tenuous

relationship to a bankruptcy case. *See Novak v. Lorenz (In re Novak)*, 116 B.R. 626, 627-28

(N.D. Ill. 1990) (finding that debtor's pre-petition breach of contract and tortious interference

with a business relationship claims were non-core matters); *Sokol v. Mass. Mut. Life Ins. Co.*

*(In re Sokol)*, 60 B.R. 294, 296 (Bankr. N.D. Ill. 1986) (holding that debtor's pre-petition

contract and tort claims were non-core matters); *Steege v. N. Trust Bank/O'Hare, N.A.*, No.

---

[3] The Plaintiffs' complaint does not specifically reference 11 U.S.C. § 523(a). Nevertheless, in the Joint Pretrial Statement submitted by the parties, the Plaintiffs contend that they seek to have the Debtor's alleged fraud, conversion, and theft claims declared non-dischargeable under § 523(a). Based upon the allegations contained in the complaint as well as the Plaintiffs' statement of contested legal issues contained in the Joint Pretrial Statement, the Court surmises that the Plaintiffs allege causes of action under § 523(a)(6) in Count I, § 523(a)(4) in Count II, and § 523(a)(2)(A) in Count III of the complaint. The Debtor acknowledges these particular sections in the instant motion for summary judgment.

·4·

96 C 742, 1996 WL332428, at *2 (N.D. Ill. June 13, 1996) (stating that trustee's state law

claims, which included tortious interference with business relations, were non-core matters).

The Seventh Circuit has stated that a bankruptcy court's "related to jurisdiction"

encompasses "'tort, contract, and other legal claims by and against the debtor, *claims that,*

*were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and*

*others. . . .'" In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) (*quoting Zerand-*

*Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994)). Because the Plaintiffs' claims

of tortious interference with contract and tortious interference with prospective business

advantage and business expectancy arise outside the context of the bankruptcy case, they are

non-core related matters.  As such, the Court must submit proposed findings of fact and

conclusions of law to the District Court pursuant to 28 U.S.C. § 157(c)(1).


## II.  APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the

statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made

applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule

56(c) reads in part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c).  *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th

Cir. 2003).

-5-

The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation omitted).

In 1986, the United States Supreme Court decided a trilogy of cases that encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Roger Whitmore's Auto. Servs., Inc. v.*

·6·

*Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). "'Factual disputes that are irrelevant or unnecessary will not be counted.'" *Fritcher*, 301 F.3d at 815 (*quoting Anderson*, 477 U.S. at 248). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (*quoting* FED. R. CIV. P. 56(c)). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper*

-7-

*County*, 901 F.2d 561, 565 (7th Cir. 1990). The manner in which a party can make this

showing depends upon which party will bear the burden of persuasion at trial.

If the burden of persuasion at trial would be on the non-moving party, the party

moving for summary judgment may satisfy Rule 56's burden of production either by

submitting affirmative evidence that negates an essential element of the non-moving party's

claim or by demonstrating that the non-moving party's evidence is insufficient to establish

an essential element of the non-moving party's claim. *See Union Nat'l Bank of Marseilles

v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993). When a defendant moves

for summary judgment, the plaintiff has the obligation to make out its prima facie case.

*Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 397 (Bankr. N.D. Ill. 2005).

The failure of the plaintiff to adduce evidence on each element of the claim results in the

entry of summary judgment for the defendant. *Id. (citing Brummett v. Sinclair Broad.

Group, Inc.*, 414 F.3d 686, 694 (7th Cir. 2005)).

Rule 56(d)[4] provides for the situation when judgment is not rendered upon the whole

---

[4]  Rule 56(d) provides as follows:

> If on motion under this rule judgment is not rendered upon the
> whole case or for all the relief asked and a trial is necessary,
> the court at the hearing of the motion, by examining the
> pleadings and the evidence before it and by interrogating
> counsel, shall if practicable ascertain what material facts exist
> without substantial controversy and what material facts are
> actually and in good faith controverted. It shall thereupon
> make an order specifying the facts that appear without
> substantial controversy, including the extent to which the
> amount of damages or other relief is not in controversy, and
> directing such further proceedings in the action as are just.

-8-

matter, but only a portion thereof. The relief sought pursuant to subsection (d) is styled

partial summary judgment. Partial summary judgment disposes of one or more counts of a

complaint in their entirety. *Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.*,

266 F.2d 200, 201 (7th Cir. 1959); *Biggins v. Oltmer Iron Works*, 154 F.2d 214, 216-17 (7th

Cir. 1946); *Quintana v. Byrd*, 669 F. Supp. 849, 850 (N.D. Ill. 1987); *Strandell v. Jackson

County, Ill.*, 648 F. Supp. 126, 136 (S.D. Ill. 1986); *Arado v. Gen. Fire Extinguisher Corp.*,

626 F. Supp. 506, 509 (N.D. Ill. 1985); *Capitol Records, Inc. v. Progress Record Distrib.

Inc.*, 106 F.R.D. 25, 28 (N.D. Ill. 1985); *In re Network 90 Degrees, Inc.*, 98 B.R. 821, 831

(Bankr. N.D. Ill. 1989). Rule 56(d) provides a method whereby a court can narrow issues

and facts for trial after denying in whole or in part a motion properly brought under Rule 56.

*Capitol Records*, 106 F.R.D. at 29.

In the case at bar, the Debtor effectively seeks partial summary judgment as her

motion relates only to the first, second, and third counts of the complaint–the counts that

seek a determination of dischargeability under 11 U.S.C. § 523(a). The Debtor assumes

incorrectly in her motion that all five counts of the complaint seek a determination of the

dischargeability of a debt. Counts IV and V of the complaint under which the Plaintiffs

allege tortious interference with contract and tortious interference with prospective business

advantage and business expectancy are not the subject of this motion. Consequently, the

---

Upon the trial of the action the facts so specified shall be
deemed established, and the trial shall be conducted
accordingly.

FED. R. CIV. P. 56(d).

-9-

Debtor's motion must be construed as a motion for partial summary judgment because it speaks only to Counts I, II, and III of the complaint.

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which addresses summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

As required, the Debtor filed a 7056-1 statement that complies with the Local Rule. It includes numbered paragraphs establishing undisputed facts along with specific references to supporting exhibits, including affidavits from the Debtor and her mother, Joyce Basel. (7056-1 statement Exs. A & C.)

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment,

-10-

specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2.

The Rule requires the opposing party to respond "to each numbered paragraph in the moving

party's statement" and to make "specific references to the affidavits, parts of the record, and

other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly,

"[a]ll material facts set forth in the [7056-1] statement required of the moving party will be

deemed to be admitted unless controverted by the statement of the opposing party." Local

Bankr.R. 7056-2B.

The Plaintiffs were ordered to respond to the instant motion by or before March 30,

2007. Instead, on that date, they filed a motion seeking to extend the time to respond to the

motion to April 20, 2007. Originally, the Plaintiffs were required to respond by or before

February 2, 2007. The Plaintiffs were granted an extension of that date to March 30, 2007.

Hence, the motion noticed for hearing on April 20, 2007, requests yet another extension of

the Plaintiffs' response time. Enough is enough. The Plaintiffs' motion to extend the time

to respond to the summary judgment motion is denied and stricken for improper notice of

presentment in violation of Local Bankruptcy Rule 9013-1. The Rule does not allow for

scheduling the date of presentment longer than fourteen days of the service of the notice. *See*

Local Bankr.R. 9013-1.

The Seventh Circuit has upheld strict application of local rules regarding motions for

summary judgment. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997);

*Feliberty v. Kemper Corp.*, 98 F.3d 274, 277-78 (7th Cir. 1996); *Bourne Co. v. Hunter

Country Club, Inc.*, 990 F.2d 934, 938 (7th Cir. 1993); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516,

519 (7th Cir. 1992); *Maksym v. Loesch*, 937 F.2d 1237, 1240-41 (7th Cir. 1991). Compliance

·11·

with Local Rules 7056-1 and 7056-2 is not a mere technicality. Courts rely greatly on the

information in these statements in separating the facts about which there is a genuine dispute

from those about which there is none. *Am. Ins. Co. v. Meyer Steel Drum, Inc.*, No. 88 C

0005, 1990 WL 92882, at *7 (N.D. Ill. June 27, 1990). The statements required by Rule

7056 are not merely superfluous abstracts of evidence. Rather, they

> are intended to alert the court to precisely what factual
> questions are in dispute and point the court to specific
> evidence in the record that supports a party's position on each
> of these questions. They are, in short, roadmaps, and without
> them the court should not have to proceed further, regardless
> of how readily it might be able to distill the relevant
> information from the record on its own.

*Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Because the Plaintiffs

failed to comply with Rule 7056-2, all material facts in the Debtor's 7056-1 statement are

deemed admitted and are set forth in Section III *infra* of the instant Memorandum Opinion.

Whether the Debtor's 7056-1 statement and supporting documents provide the Court with

the requisite roadmap, however, is another matter.

-12-

## III. UNDISPUTED FACTS AND BACKGROUND

The following facts are undisputed.[5]  The Debtor was a 12.5% minority shareholder and employee of Go Wild Fun Safaris, Inc. ("GWFS"), an Illinois corporation.  (7056-1 statement ¶ 1; Ex. A ¶ 5; Joint Pretrial Statement, Statement of All Admitted or Uncontested Facts ("JPS") ¶ 10.)  In addition, the Debtor admits that she was also a director of GWFS.  (Compl. ¶ 9; Answer ¶ 9.)  Plaintiff Peter Vozella is, and was at all relevant times, a shareholder, director, and chief financial officer of GWFS.  (7056-1 statement ¶ 3; JPS ¶ 3.)  Plaintiff Janet Vozella is, and was at all relevant times, a director, shareholder, and chief executive officer of GWFS.  (7056-1 statement ¶ 4; JPS ¶ 4.) According to the complaint, Plaintiff Robert Pacenti ("Pacenti") is Janet Vozella's brother and one of the majority shareholders of GWFS.  (Compl. ¶ 7.)  Plaintiff Glenbard Travel, Inc. ("Glenbard Travel") is an Illinois corporation and is in the travel agency business.  (Id. ¶ 8.)  Janet Vozella is the principal officer and shareholder of Glenbard Travel.  (Id.)

In the early 1970s, the Debtor's parents, Michael and Joyce Basel (the "Basels") founded Fun Safaris, Inc. ("FSI"), an Illinois corporation.  (7056-1 statement ¶ 6; Ex. A ¶ 2; JPS ¶ 6.)  FSI planned, marketed, and sold travel packages for safaris in Africa.  (7056-1

---

[5] At the outset of the facts, the Court notes the careless and sloppy manner in which the 7056-1 statement was prepared.  First, and most disturbing, is that the Debtor's attorney signed this document on behalf of Nicolette Basel-Johnson, the Debtor's sister, not on behalf of the Debtor.  Although Nicolette Basel-Johnson is a defendant in a similar but separate adversary proceeding (05 A 02735), there is no excuse for such carelessness.  Further, reference is made in the 7056-1 statement to the affidavit of Nicolette Basel-Johnson, but her affidavit is not attached as an exhibit.  (7056-1 statement ¶ 37.)  Basel-Johnson submitted an affidavit in support of her motion for summary judgment in the adversary proceeding filed against her.  That affidavit is not a part of the record in this matter for purposes of the instant motion for summary judgment filed by this Debtor.  Such carelessness by the Debtor's attorney makes the Court's job of sifting through the motion papers more cumbersome.

-13-

statement ¶ 6; JPS ¶ 6.) In or around 1998, FSI began to suffer financial problems due to the civil unrest in Zimbabwe. (7056-1 statement ¶¶ 7 & 8; Ex B p. 59; JPS ¶ 7.) In 2001, the Vozellas, the Debtor, the Basels, and Nicolette Basel-Johnson ("Basel-Johnson"), the daughter of the Basels and the Debtor's sister, met to discuss FSI and its business opportunities. (7056-1 statement ¶ 9; JPS ¶ 8.) The Basels agreed to sell to the Vozellas all of FSI's assets. (*Id.*; Ex. C ¶ 2.) In order to effectuate the asset purchase, the Vozellas formed GWFS. (7056-1 statement ¶ 9; JPS ¶ 8.)

Prior to purchasing FSI, the Vozellas promised the Basels that they would infuse at least $350,000.00 into the newly formed GWFS. (7056-1 statement ¶ 10; Ex. C ¶ 7.) Based upon this representation, the Basels agreed to sell FSI for the nominal sum of $10.00. (7056-1 statement ¶ 11; Ex. C ¶ 8.) On November 6, 2001, the Basels, on behalf of FSI, and Janet Vozella, on behalf of GWFS, executed an asset purchase agreement (the "Agreement"). (7056-1 statement ¶ 13; Ex. A ¶ 3; Ex. C ¶ 2 and Ex. No. 1 thereto; JPS ¶ 9.) Pursuant to the terms of the Agreement, the Basels received nothing in return for the sale of FSI's assets except the sum of $10.00. (7056-1 statement ¶ 14; Ex. C ¶ 3; JPS ¶ 10.) The Agreement specifically provided, however, that the Basels' daughters, the Debtor and Basel-Johnson, would each become 12.5% shareholders of GWFS. (7056-1 statement ¶ 14; Ex. A ¶ 5; JPS ¶ 10.) The Vozellas owned the remaining shares of GWFS. (7056-1 statement ¶ 14; JPS ¶ 10.)

At or near the time of the execution of the Agreement, Peter Vozella, Basel-Johnson, and the Debtor met daily to discuss FSI's liabilities and the amount of cash GWFS needed to operate and to repay FSI's critical debts to ensure both a seamless transition in ownership

-14-

and GWFS's future success in the travel industry. (7056-1 statement ¶ 15; JPS ¶ 11.)  The

Debtor represented to Peter Vozella that FSI did not have the funds to pay certain key

vendors, and that those vendors must be paid if GWFS intended to maintain relationships

with both the prior FSI customers booked for trips and the vendors who arranged the

itineraries for the trips.  (7056-1 statement ¶ 16; JPS ¶ 12.)[6]

The Vozellas asked the Debtor to work for GWFS.  (7056-1 statement ¶ 17; Ex. A

¶ 6.)  Her duties included performing the group coordinating and group management for

GWFS.  (7056-1 statement Ex. A ¶ 6.)  Peter Vozella had complete access to the books and

records of GWFS and was at GWFS's offices on a daily basis.  (7056-1 statement ¶ 28; Ex.

B pp. 92-93.)  The offices of GWFS were maintained in a townhouse located within a row

of three town homes in which the Basels resided.  (7056-1 statement ¶ 19; JPS ¶ 20.)

After the Basels sold FSI to the Vozellas, the Basels maintained their account at Bank

One, N.A. (the "Bank One Account").  (7056-1 statement ¶ 20; Ex. A ¶ 7; Ex. C ¶ 4.)  That

Account had been used as the business account for FSI.  (*Id.*)  The Basels were personal

guarantors of a line of credit tied to the Bank One Account.  (*Id.*)  The Bank One Account

was not purchased as part of the Agreement to purchase FSI.  (7056-1 statement ¶ 21; Ex.

C ¶ 6.)  The Basels, the Debtor, and Basel-Johnson were all signatories on the Bank One

Account.  (7056-1 statement ¶ 22; Ex. A ¶ 8; Ex. C ¶ 5.)  Peter Vozella was not a signatory

on the Bank One Account.  (7056-1 statement ¶ 23; Ex. B pp. 90-91.)  After the formation

---

[6]  The 7056-1 statement refers to Basel-Johnson as the individual who made this
representation to Peter Vozella.  The Court assumes that the correct reference is to the
Debtor.  The Joint Pretrial Statement names the Debtor as the one who made the statement.
This error in the 7056-1 statement represents yet another example of the sloppiness with
which this motion was prepared.

-15-

of GWFS, numerous checks were drawn on the Bank One Account to pay for GWFS's expenses. (7056-1 statement ¶ 26; Ex. C ¶ 10; JPS ¶ 14.) All checks written by the Debtor in discharging her duties for GWFS were written with the express authorization of Peter Vozella. (7056-1 statement ¶ 27; Ex. A ¶¶ 13 & 15.)

After the Vozellas formed GWFS and purchased FSI, GWFS obtained a $150,000.00 business line of credit from Hinsbrook Bank. (7056-1 statement ¶ 24; Ex. A ¶ 9; JPS ¶ 13.) The Hinsbrook Bank line of credit was personally guaranteed by, *inter alia*, the Vozellas, Pacenti, Basel-Johnson, and the Debtor. (*Id.*)

On August 6, 2002, the Basels, the Debtor, and Basel-Johnson sent a letter to Peter Vozella demanding that he infuse capital funds into GWFS as promised, and cease withdrawing funds for "undocumented expenses." (7056-1 statement ¶ 18; Ex. C ¶ 9 and Ex. No. 3 thereto.) Shortly thereafter, on August 19, 2002, the Basels, the Debtor, and Basel-Johnson filed a complaint in the Circuit Court of Cook County, Illinois against, *inter alia*, GWFS and the Vozellas. (7056-1 statement ¶ 29; JPS ¶ 16.) GWFS ceased operating in May of 2003. (7056-1 statement ¶ 38; JPS ¶ 22.)

On February 4, 2003, Joyce Basel terminated her employment with GWFS by way of written letter to Peter Vozella. (7056-1 statement ¶ 34; Ex. C ¶ 11 and Ex. No. 5 thereto; JPS ¶ 18.) Joyce Basel terminated her employment with GWFS because she did not receive payment or reimbursement of her expenses incurred while traveling for purposes of generating sales for GWFS. (7056-1 statement 35; Ex. C ¶ 11 and Ex. No. 5 thereto.) After terminating her employment with GWFS, she opened a travel company which she named Unlimited Fun Safaris. (7056-1 statement ¶ 36; Ex. C ¶ 12.)

-16-

The Debtor filed a Chapter 7 bankruptcy petition on September 9, 2005. She received a discharge on May 22, 2006. The Plaintiffs filed this adversary proceeding on December 12, 2005. The Debtor filed the instant motion for summary judgment on January 17, 2007. Some of the evidence supporting the motion consists of the Debtor's eighteen-paragraph affidavit; a bank statement for GWFS; numerous copies of checks written on the Bank One Account; an illegible copy of a state court order; Basel-Johnson's deposition taken in the state court proceedings; Joyce Basel's thirteen-paragraph affidavit; a copy of the agreement between FSI and GWFS; an account analysis of the Bank One Account for the period March 1-31, 2002; a letter dated August 6, 2002 to Peter Vozella from the Basels, the Debtor, and Basel-Johnson; and a letter from Joyce Basel to Peter Vozella dated February 4, 2003. How these documents tie together is a conundrum to the Court. Indeed, this evidence submitted in support of the motion does not constitute a clear roadmap that defeats all essential elements of the Plaintiffs' alleged causes of action. This may be viewed more appropriately as the tip of the litigation iceberg.

The gist of the complaint is that the Debtor diverted and misappropriated funds of GWFS for her personal expenses. Further, according to the Plaintiffs, the Debtor, along with the Basels and Basel-Johnson, incorporated other companies and usurped GWFS's corporate opportunities. The Plaintiffs allege that the Debtor misappropriated, stole, and converted in excess of $2,500,000.00 from GWFS for her personal benefit. They also allege that the Basels, Basel-Johnson, and the Debtor made material misrepresentations about FSI's business and solvency which induced the Plaintiffs to agree to the acquisition.

-17-

The Debtor denies any wrongful conduct. She contends that most of the GWFS business expenses were paid from the Bank One Account that was not sold to GWFS. In addition, the Debtor maintains that the checks written from the Bank One Account and the Hinsbrook account were written with the express knowledge and authorization of Peter Vozella. According to the Debtor, Janet Vozella, using Glenbard Travel as a ticket broker, was realizing ticket sales obtained through GWFS without GWFS receiving its share of the commissions due on the sales. Thus, the Debtor contends wrongful conduct by some of the Plaintiffs, but not by her.

## IV. DISCUSSION

### A.    Exceptions to the Discharge of a Debt

The main purpose of a discharge in bankruptcy is to give a debtor a fresh start. *See Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir. 1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr. N.D. Ill. 1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. *Shaw Steel v. Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998); *Goldberg Secs. v.*

-18-

*Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). "The statute is narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

**B.     11 U.S.C. § 523(a)(2)**

Pursuant to Count III of the complaint, the Plaintiffs allege that the Debtor made several false statements of material fact, including that she would transfer FSI's goodwill and assets to GWFS in order to grow GWFS's business, and that GWFS had insufficient funds to pay its vendors and business expenses. According to the Plaintiffs, the Debtor's statements and representations were material and she knew her statements were false. The Plaintiffs allege that the Debtor made those false statements in order to induce them to contribute funds to pay GWFS's expenses, execute the Agreement, and obligate themselves personally on corporate loans. Finally, the Plaintiffs allege that they relied on the Debtor's false statements and representations and that their reliance was reasonable.

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

-19-

> (A) false pretenses, a false
> representation, or actual fraud,
> other than a statement
> respecting the debtor's or an
> insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) lists three separate grounds for

dischargeability: actual fraud, false pretenses, and a false representation. *Id.*; *Bletnitsky v.*

*Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). Even though the elements

for each exception vary under common law, courts in the Seventh Circuit are required to

apply a single test to all three grounds. *Jairath*, 259 B.R. at 314.

### 1. False pretenses or false representation

In order to except false pretenses or a false representation from discharge under §

523(a)(2)(A), the Plaintiffs must establish the following elements: (1) the Debtor made a

false representation of fact (2) which the Debtor (a) either knew to be false or made with

reckless disregard for its truth and (b) made with an intent to deceive; and (3) the Plaintiffs

justifiably relied on the false representation. *See Mulder*, 307 B.R. at 643; *Bednarsz v.*

*Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr. N.D. Ill. 2004). To prevail on a §

523(a)(2)(A) complaint, all three elements must be established. *Glucona Am., Inc. v.*

*Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). Failure to establish

any one fact is outcome determinative. *Jairath*, 259 B.R. at 314.

"Proof of intent to deceive is measured by the debtor's subjective intention at the time

the representation was made." *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R.

349, 356 (Bankr. N.D. Ill. 2004). "Where a person knowingly or recklessly makes false

·20·

representations which the person knows or should know will induce another to act, the finder

of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315.

Reliance on a false pretense or false representation under § 523(a)(2)(A) must be

"justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). The justifiable reliance standard

imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.*

at 70-72. Whether a party justifiably relies on a misrepresentation is determined by looking

at the circumstances of a particular case and the characteristics of a particular plaintiff, not

by an objective standard. *Id.* at 71; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278

B.R. 496, 508 (Bankr. N.D. Ill. 2002). To satisfy the reliance element of § 523(a)(2)(A), the

Plaintiffs must show that the Debtor made a material misrepresentation that was the cause-in-

fact of the debt that the Plaintiffs want excepted from discharge. *See Mayer v. Spanel Int'l*

*Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir. 1995) ("Reliance means the conjunction of a

material misrepresentation with causation in fact."). "[A] person is justified in relying on a

representation of fact although he might have ascertained the falsity of the representation had

he made an investigation." *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill.

1998) (*quoting Field v. Mans*, 516 U.S. at 70).

**2. Actual fraud**

The Seventh Circuit Court of Appeals has made it clear that misrepresentation and

reliance thereon are not always required to establish fraud. *McClellan v. Cantrell*, 217 F.3d

890, 894 (7th Cir. 2000). Indeed, the Seventh Circuit defined the term "fraud":

> 'Fraud is a generic term, which embraces all the multifarious
> means which human ingenuity can devise and which are
> resorted to by one individual to gain an advantage over

-21-

> another by false suggestions or by the suppression of truth.
> No definite and invariable rule can be laid down as a general
> proposition defining fraud, and it includes all surprise, trick,
> cunning, dissembling, and any unfair way by which another
> is cheated.'

*Id.* at 893 (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952)). "Actual fraud"

is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design

involving direct and active operation of the mind, used to circumvent and cheat another."

*Id.* (internal quotation omitted). Hence, a different analysis must be utilized when a creditor

alleges actual fraud. *Id.* The *McClellan* court opined that because common law fraud does

not always take the form of a misrepresentation, a creditor need not allege misrepresentation

and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). *Id.*

Rather, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended

to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge

dispute. *Id.* The fraud exception under § 523(a)(2)(A) does not reach constructive frauds,

only actual ones. *Id.* at 894. "Though cases often say that exclusions from dischargeability

should be narrowly construed, we have emphasized that they serve vital functions." *Id.* at

893 (*quoting Mayer*, 51 F.3d at 674) (internal citations omitted). "Congress concluded that

preventing fraud is more important than letting defrauders start over with a clean slate, and

we must respect that judgment." *Id.* (*quoting Mayer*, 51 F.3d at 674).

  The Court finds that genuine issues of material fact exist which preclude the entry of

summary judgment under Count III of the complaint. Specifically, whether the Debtor made

representations that were false or were made with such reckless disregard for the truth as to

constitute willful misrepresentations is at issue and cannot be determined at this stage of the

-22-

proceedings. None of the evidence submitted by the Debtor negates whether she made false

representations that she would transfer FSI's goodwill and assets to GWFS in order to grow

GWFS's business, and that GWFS had insufficient funds to pay its vendors and business

expenses. Moreover, whether the Debtor had the actual intent to defraud the Plaintiffs

cannot be determined on this limited record.

The mishmash of affidavits, deposition, check copies, and account statements offered

in support of the instant motion do not sort out the wheat from the chaff in this piece of

litigation. Rather, those documents serve only to obfuscate the record. It is not the job of

this Court to sift through the Debtor's evidence to determine the relative significance and

importance of each document to her position. As the Seventh Circuit has stated, "'[j]udges

are not like pigs, hunting for truffles buried in' the record." *Albrechtsen v. Bd. of Regents*

*of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (*quoting United States v. Dunkel*, 927

F.2d 955, 956 (7th Cir. 1991)).

In sum, the Debtor has not submitted substantive evidence that negates an essential

element of the non-moving Plaintiffs' claim under § 523(a)(2)(A). Thus, the motion for

summary judgment as to Count III of the complaint is denied.

## C.     11 U.S.C. § 523(a)(4)

In Count II of the complaint, the Plaintiffs allege that the Debtor, as a director,

shareholder, and key employee, owed a fiduciary duty to GWFS and the Vozellas not to

usurp corporate assets and commit corporate waste. According to the Plaintiffs, the Debtor

breached her fiduciary duty by surreptitiously causing unauthorized payments for her

personal expenses and absconding with GWFS's business opportunities.

-23-

Section 523(a)(4) of the Bankruptcy Code states as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–
>
> > (4) for fraud or defalcation while acting in a
> > fiduciary capacity, embezzlement, or
> > larceny[.]

11 U.S.C. § 523(a)(4).

Section 523(a)(4) provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The meaning of these terms is a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003). In order for the Plaintiffs to prevail under § 523(a)(4), they must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. *See* 11 U.S.C. § 523(a)(4). The complaint does not specifically identify which prong of § 523(a)(4) is the basis of the Plaintiffs' claim. Thus, the Court will address each one.

**1. Express Trust or Fiduciary Relationship**

A threshold inquiry is whether an express trust or fiduciary relationship ran from the Debtor to the Plaintiffs under the facts of this matter. The existence of an express trust or fiduciary relationship is tested under federal law standards. *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000). An express or technical trust requires an explicit declaration of trust, a clearly defined trust *res*, and an intent to create a trust. *Monroe*, 304 B.R. at 358. Constructive, resulting, and implied trusts do not fall with the confines of §523(a)(4). *In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994).

-24-

A § 523(a)(4) cause of action can be based on a fiduciary relationship other than one arising from an express trust. *Frain*, 230 F.3d at 1017; *Marchiando*, 13 F.3d at 1115-16. "A fiduciary relationship may arise separate from an express trust, . . . but it is the substance and character of the debt relationship that determines whether such a fiduciary relationship exists." *Monroe*, 304 B.R. at 358. The Seventh Circuit has found that a fiduciary relationship exists for purposes of § 523(a)(4) when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *Marchiando*, 13 F.3d at 1116; *see also In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) ("[S]ection 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge. . . ."). For example, a lawyer-client relationship, a director-shareholder relationship, and a managing partner-limited partner relationship all require the principal to "'repose a special confidence in the fiduciary.'" *Frain*, 230 F.3d at 1017 (*quoting Marchiando*, 13 F.3d at 1116).

However, not all fiduciary relationships fall within the purview of § 523(a)(4). *Woldman*, 92 F.3d at 547. A fiduciary relationship qualifies under § 523(a)(4) only if it "imposes real duties in advance of the breach. . . ." *Marchiando*, 13 F.3d at 1116. In other words, the fiduciary's obligation must exist prior to the alleged wrongdoing. *Id.*

### 2. Defalcation

"Defalcation" is not a defined term in the Bankruptcy Code. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996) (internal

-25-

quotation omitted). *See also Blackhawk B.M.X., Inc. v. Anderson (In re Anderson)*, 64 B.R. 331, 334 (Bankr. N.D. Ill. 1986) (same); *Murphy v. Slack*, No. 06 C 2091, 2006 WL 2583726, at *1 (N.D. Ill. Sept. 5, 2006) (*quoting* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 590 (1971)). An objective standard is used to determine a defalcation, and intent or bad faith is not required. *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr. N.D. Ill. 1994). Mere negligence does not constitute defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382-85 (7th Cir. 1994) (construing defalcation under § 523(a)(4) and § 523(a)(11)). Although the Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the context of § 523(a)(4), it has required something more than mere negligence or mistake, but less than fraud. *Id.* at 1385; *Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 656-57 (Bankr. N.D. Ill. 1998). Some degree of culpability is required to make a debt non-dischargeable as a defalcation under § 523(a)(4), *see Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511-12 (2d Cir. 1937), and a debtor's knowledge is relevant, *see Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654, 658-59 (Bankr. W.D. Wis. 1996). In sum, in order to establish that a debt is non-dischargeable for reason of defalcation while acting in a fiduciary capacity, the Plaintiffs must establish, by a preponderance of the evidence, the existence of an express trust or a fiduciary relation and a debt caused by the Debtor's defalcation while acting as a fiduciary. *See Grogan*, 498 U.S. at 291; *Woldman*, 92 F.3d at 547.

### 3. Embezzlement

Embezzlement under § 523(a)(4) has been defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has

-26-

lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (*quoting Moore v. United States*, 160 U.S. 268, 269 (1895)). To prove embezzlement, the Plaintiffs must show: (1) the Debtor appropriated the subject funds for her own benefit; and (2) the Debtor did so with fraudulent intent or deceit. *Id.*; *Monroe*, 304 B.R. at 359; *Dobek*, 278 B.R. at 509; *Pierce v. Pyritz*, 200 B.R. 203, 205 (N.D. Ill. 1996); *Pawlinski*, 170 B.R. at 390. A fiduciary relationship or trust relationship need not be established in order to find a debt non-dischargeable by an act of embezzlement. *Pawlinski*, 170 B.R. at 390. Embezzlement differs from larceny only in that the original taking was lawful, or at least with the consent of the owner, unlike larceny, where there is a requirement that felonious intent exist at the time of the taking. *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991).

### 4. Larceny

Larceny under § 523(a)(4) necessitates a showing that a debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to his own use without the owner's consent. *Id.*; *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 877 (Bankr. N.D. Ill. 2004); *Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 802 (Bankr. N.D. Ill. 1995).

The Court finds that the Debtor's position as a 12.5% shareholder and employee of GWFS does not place her in an express or technical fiduciary capacity for purposes of § 523(a)(4). However, the Debtor admitted in her answer that she was a GWFS director. (Compl. ¶ 9; Answer ¶ 9.) Thus, the Court finds that as a director of GWFS, the Debtor was a fiduciary and she owed fiduciary duties to the other shareholders of GWFS. Accordingly, the Court rejects the Debtor's argument that she was not in a fiduciary relationship.

-27-

As discussed *supra* with respect to the § 523(a)(2)(A) claim, the limited record furnished with this motion is confusing and undeveloped. Nevertheless, the Debtor states in her affidavit that all checks she wrote from the Bank One Account were written with the express knowledge and authorization of Peter Vozella. (7056-1 statement Ex. A ¶¶ 13 & 15.) Based upon the Debtor's statement, which is the only evidence before the Court, the Court finds that the Debtor has shown that her actions were not tantamount to embezzlement or larceny. The Plaintiffs failed to establish that the Debtor fraudulently appropriated property of GWFS or that she wrongfully took GWFS's property with the fraudulent intent to convert it to her own.

With respect to the defalcation prong, however, there was no evidence adduced by the Debtor that negates an essential element of the Plaintiffs' claim for defalcation while acting in a fiduciary capacity. The limited record does not address whether the Debtor in her fiduciary capacity as director of GWFS steered business opportunities away from GWFS. Accordingly, the motion must be denied on the fiduciary defalcation prong of § 523(a)(4). Hence, the Court denies the Debtor's request for summary judgment under Count II of the complaint.

**D.      11 U.S.C. § 523(a)(6)**

Pursuant to Count I of the complaint, the Plaintiffs allege that the Debtor misappropriated, stole, and converted in excess of $2,500,000.00 from GWFS for her personal benefit. Further, the Plaintiffs contend that the Debtor's actions in allegedly stealing and converting these funds were willful and malicious.

-28-

Section § 523(a)(6) of the Bankruptcy Code provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6). In order for a debt to be non-dischargeable under § 523(a)(6), the Plaintiffs must prove three elements by a preponderance of the evidence: (1) that the Debtor intended to and caused an injury to the Plaintiffs' property interest; (2) that the Debtor's actions were willful; and (3) that the Debtor's actions were malicious. *See Mulder*, 307 B.R. at 641; *Ardisson*, 272 B.R. at 356; *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 662 (Bankr. N.D. Ill. 1998).

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Under *Geiger* and its stringent standards, to satisfy the requirements of § 523(a)(6), the Plaintiffs must plead and prove that the Debtor actually intended to harm them and not merely that the Debtor acted intentionally and they were thus harmed. *See id.* at 61-62. In other words, the Debtor must have intended the tortious consequences of her act. *See id; see also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004). Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Geiger*, 523 U.S. at 64.

-29-

The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Recent decisions, however, have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required by *Geiger. See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463-65 (6th Cir. 1999); *Tex. by & Through Board of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998); *Su v. Carrillo (In re Su)*, 259 B.R. 909, 913 (B.A.P. 9th Cir. 2001); *Fidelity Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000). Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury. *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002).

An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. . . ." *Thirtyacre*, 36 F.3d at 700. The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. *Paul*, 266 B.R. at 696. A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious. *Thirtyacre*, 36 F.3d at 700. Whether an actor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact. *Id.*

The Court finds that the Debtor demonstrated that there are no material issues of fact and that, as a matter of law, she is entitled to judgment under Count I of the complaint. Specifically, there are no genuine issues as to whether the Debtor's actions were wrongful, done intentionally, caused injury to the Plaintiffs, and done without just cause and excuse.

-30-

The Debtor asserts in her affidavit that all checks written by her were written with the specific knowledge and authorization of Peter Vozella. (7056-1 statement Ex. A ¶¶ 13 & 15.) This evidence negates the Debtor's alleged wrongful conversion of GWFS's assets. Therefore, summary judgment in favor of the Debtor is proper under Count I of the complaint.

In conclusion, the Court grants the motion for summary judgment under Count I and denies the motion as to Counts II and III. The Court narrows the issues for trial under Rule 56(d). A trial is set to commence in this matter on November 26, 2007 at 1:00 p.m.

## V. CONCLUSION

For the foregoing reasons, the Court grants the Debtor's motion for summary judgment under Count I of the complaint and denies the motion as to Counts II and III. The Court narrows the issues for trial under Rule 56(d). A trial is set to commence in this matter on November 26, 2007 at 1:00 p.m.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: ___4/17/7___

_____
John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Vozella et al v. Basel-Van Aswegen
**Adversary No. 05 A 02736**

Jeffrey R. Kulwin, Esq.
Shelly B. Kulwin, Esq.
Kulwin, Masciopinto & Kulwin, L.L.P.
161 N. Clark Street, Suite 2500
Chicago, IL 60601

Lester A. Ottenheimer, III, Esq.
Ottenheimer Teplinsky Rosenbloom, LLC
750 Lake Cook Road, Suite 140
Buffalo Grove, IL 60090

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

Shawn C. Fulbright, Esq.
Guyer & Enichen, PC
2601 Reid Farm Road
Rockford, IL 61114

Brenda Porter Helms, Esq.
c/o Albany Bank & Trust
3400 W. Lawrence Avenue
Chicago, IL 60625